Our final case for this morning is Nelson v. Peggy Holinga-Katona. Ms. Layton, when you're ready. May it please the court, I am India Layton and I represent Ms. Betty Ruth Nelson, the verdict that was entered against Ms. Nelson. The standard for that is if it's clearly against the weight of the evidence and the trial was unfair to the moving party. We believe we exceed the standard in that Ms. Nelson was on August, I'm sorry, on April 30, 2008, she went to a, she went to, she came into work that was clearly displayed a paraphernalia for a different political person that she was advocating for Barack Obama to win a presidency candidacy and other people in her office were advocating for Hillary Clinton. Excuse me Ms. Layton, before you go any further, I could not discern from the record, maybe you could help me, did the, whether the, in the district court, there was ever a motion for a judgment JMOL or whether there was ever a motion for a new trial? No, there was not a motion. At that time, at the close of the district court, at the close of the jury trial, the counsel of record withdrew and Ms. Nelson proceeded with the appeal on her own and therefore there was no, no one had requested the timely request for a new trial or judgment JLP. So there was no opposition to the entry of the verdict on the, judgment on the verdict? Well, there, Ms. Nelson on her own had entered but late, after the 30 days, had submitted some things to the district court that were... So the answer to my question is nobody raised any issue when the judgment, when the court entered judgment on the verdict? No, Your Honor, there was not. So that's a problem for us, I mean the fact that she was pro se at that point may be interesting but the Supreme Court has said in a case called Unitherm Food Systems that you can't make this kind of argument on appeal unless you gave the district court an opportunity under Rule 50 or Rule 59 to correct whatever mistakes may have been made. So this was a preliminary concern of mine as well. Yes, Your Honor, I do understand that concern. However, the rules allow for a person to appeal the jury's verdict even without requesting a judgment notwithstanding the verdict. Well, you can appeal but it depends what arguments you're trying to make and what the court said in Unitherm is that a party's not entitled to pursue a new trial on appeal unless that party makes an appropriate post-verdict motion in the district court. So it could be that there might be other theories, I don't want to speculate, but she didn't make, given the circumstances that you've described, she did not make such a motion. That's correct, Your Honor. But at this point in time, because that was never requested, Your Honor, I was only left with asking the court to overturn the jury's verdict, not for a new trial. So, Your Honor... When did you come into the case? I came into the case, Your Honor, after Ms. Nelson had filed a motion, the notice of appeal, and after she had filed the first... I'm so sorry, the... The opening brief in this court. Or docketing statement? Docketing statement, I'm sorry. So you filed the opening brief? Yes, Your Honor. I filed both briefs, and now I'm here to do the argument. There's a problem. What do you think the standard of review for us is in the kind of case you're trying to present? The standard for review is that the appellant has to show that the verdict was against the clear weight of the evidence or the trial was unfair to the moving party. So here's my issue with that. Normally, if somebody comes here and they're complaining that they were entitled to a new trial and they didn't get one, they've filed a Rule 59 motion, and we review the denial of a Rule 59 motion for abuse of discretion. But, of course, if the district judge was never asked to do anything, it's very hard to say the district judge abused discretion. So you're kind of asking us to kind of jump through and be the district court judge here. Not necessarily, Your Honor. I think what I'm asking at this point, Your Honor, is not that you jump in the place of the district court judge, but that you review the evidence in light of the situation, that you review the evidence in light of the situation to determine if, determine that the jury verdict was against the clear weight of the evidence, not that to stand in his place to request a new trial. Your Honor, I see my time for- You're into your rebuttal time. Yes, Your Honor. We've asked you some questions. You can use this, and I'll give you an extra minute for rebuttal. I'm sorry? You may use some of your rebuttal time, and I will give you an extra minute at the end for your rebuttal. Okay. Thank you, Your Honor. I've reserved time for my rebuttal. That will be fine. Mr. Bosch. Good morning, Your Honors. May it please the court. You were absolutely correct. There was no motion for a judgment notwithstanding the verdict. We're here today. The standard to reverse this verdict would be, according to Pickett, is there a reasonable basis in the record to support the verdict? And I'd submit to the court that without question that is there. The appellant must prove up, in fact, that she was fired because of her support for Barack Obama for president. That can't be done at trial. The defendant, Katona, was asked about this banquet that the appellant attended, and Ms. Katona said she could have been there, but I don't recall seeing her there. There was, in the brief, there was a lot of talk about hearsay from Katona and her testimony. My recollection is that that testimony was in response to the appellant's lawyer, not to me, not for mine. There is no class of one. We laid out a long record of her history of disciplinary issues within the office. We laid out in the record the fact that other employees and her supervisors did not like her. Also, again, still, Indiana is an at-will employment state, where, as we all know, she can be fired for any reason or for no reason, as long as it is not an illegal reason. And the jury got to ponder all of these things in its hour-long deliberation before they returned the verdict on behalf of the defendants. So what about all this evidence about the funeral? I mean, it seems that she could have taken a few personal days off, even if it wasn't bereavement. And there was testimony to that effect, I believe, from Mr. Cack, that she could have taken personal days. She could have taken any kind of days other than bereavement days. Well, I thought her understanding was, you know, I'll put it in as bereavement, but somebody told her, you know, if we're not satisfied that the relationship falls within our rules, we'll just charge it against your personal days. I thought she thought that was set. I don't think, in my opinion, Ms. Nelson never had that opinion. Her whole history was it's my way or no way. In fact, her supervisor, Mr. Weiser, said that the bereavement matter was just kind of the straw that broke the camel's back here. We were done. The HR person told Katona, you can get rid of her. It's an at-will employment situation. And Katona said in her testimony she didn't like firing people. In fact, she couldn't bring herself to do the firing. The consultant did the firing. Was there evidence that Ms. Katona knew about Ms. Nelson's political allegiances? Ms. Nelson testified that she was at this dinner and that she saw Ms. Katona. Ms. Katona said she may have been there. So your position has to be the jury could have believed Ms. Katona's account. Yes. Can I answer any further questions? Thank you very much. Thank you. Ms. Lane. And you can give her that. Okay. May I please report? Your Honor, she was rightfully at the political rally under her constitutional right to support the candidate that she wanted to support. That was the last thing that broke the camel's back. As you questioned the appellee's attorney, there were several things that they brought up in their brief, which was they buried the evidence under all of the disciplinary actions, which were actually retaliatory actions because they wanted her to falsify, falsely pay expense reports that were incomplete and that weren't properly submitted. All her reprimands, as a matter of fact, seven of the eight reprimands that she had were for her not paying, not falsely paying the purchase orders that the people had submitted. And because of that, that's where the point of contention came between Ms. Nelson and Ms. Katona. When she asked her supervisor, Mr. Weiser, for it in writing, he refused to give it to her, which also is an indication that that was not the proper way to do her job. After those couple of years of contentions between her opposing an illegal practice and then them punishing her for it through written reprimands, verbal reprimands, and ultimately suspensions, and then ultimately termination after she comes back from the political rally in support of a different candidate. When she came back, nine days after the political rally, which was actually the day after the election when Barack Obama had won the candidacy, she then was fired. And they offered other contentions stating that the funeral leave, which was actually not a proper reason and not a motivating decision because she had brought back all the paperwork that was needed to show that she had properly taken the days. In fact, there was nowhere in their brief or anywhere that showed that she was ever denied those days. In fact, Exhibit A showed that she was properly given those days. So given that, that reason was not a basis to fire her. And it was subterfuge. It was pretextual. So therefore, because of that, and because it had to be the political opposition, the political speech where she properly was in a proper form outside of her job, which they are not allowed to advocate at the job, and she was in a proper venue and doing the proper thing of advocating for the person that she wanted to become the candidate for the United States president. So given that, and also given that they retaliated against her for refusing to pay claims that were not proper, and in their notes and in their brief, it's clear that they never said the claims were proper claims. They just told her to pay them. They never said she wasn't correct in that those claims were not proper claims. They just said pay them anyway, which she refused to do because it would get her in trouble if an audit came through. So she's like, give those to me in writing. And they refused to do that and to protect her job. And the jury missed that because it's buried up under all of this innuendo, them accusing her of having, in their brief, they made claims. They only brought up claims. They never brought up anything that had to do with her being punished. And in our brief, we brought up everything that she was actually punished for, which actually had only to do with her refusing to do an illegal act at her job. So therefore, Your Honor, she was retaliated against and fired after this political rally, which was the straw that broke the camel's back, as they say, and which was a violation of her First Amendment right. So, Your Honor, we're asking the court, based on that, to overturn the jury's verdict against Ms. Betty Ruth Nelson. Thank you very much. All right. Thank you. Thanks to both counsel. We'll take the case under advisement.